**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Triad Construction Company, Inc.,** | ) | **Case No. 11-41662-drd7** |
| **Debtor.** | ) | |
| _____ | ) | |
| **Tom Nadler,** | ) | |
| **Don Nadler &** | ) | |
| **Gary Rodenberg** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Adversary No. 15-4102** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **John Knox Village,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion to Dismiss (the "Motion") of defendant John

Knox Village ("Defendant" or "JKV").  This Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 1334(b) and 157(a) and (b).  This is a core proceeding which this Court may hear

and determine pursuant to 28 U.S.C. § 157(b)(2)(A) & (E).  For all the reasons set forth below the

Court will grant the Motion.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On April 12, 2011, Triad Construction Company, Inc. ("Triad") filed a bankruptcy

petition.  John Knox Village paid $124,299.23 to Triad in three payments, all within 90 days of

Triad filing bankruptcy. On August 4, 2011, John Knox Village filed a lawsuit in the Circuit

Court of Jackson County, Missouri (the "State Lawsuit") against Tom Nadler, Don Nadler and

1

Gary Rodenberg, co-owners of Triad (the "State Court Defendants").  In Count III of the state

court Complaint, plaintiff John Knox Village alleged fraudulent conveyance of funds it paid to

Triad, a non-party in that lawsuit, and sought to recover from the State Court Defendants by

attempting to pierce the corporate veil and hold them, as co-owners of Triad, responsible for

Triad's debt through civil conspiracy and fraud. The State Court Defendants argued that the

bankruptcy court had exclusive jurisdiction to determine whether the alleged fraudulent

conveyances were property of the Triad bankruptcy estate and thus, the state court did not have

subject matter jurisdiction over that issue.  The state court held a trial on the issues alleged in the

complaint, including the Count III issue of whether the alleged fraudulent conveyances were

property of the Triad bankruptcy estate and whether the corporate veil could be pierced to hold

the individual State Court Defendants responsible and entered judgment in favor of plaintiff JKV.

Following the trial and entry of judgment in favor of the plaintiff, the State Court

Defendants filed a motion to dismiss Count III of the Complaint and a Motion to Vacate

Judgment.  The State Court entered an Order after hearing arguments and reviewing the motion

and denied the State Court Defendants' motion to dismiss and motion to vacate judgment.  The

State Court Defendants appealed to the Missouri Court of Appeals arguing that, among other

things, the State Court erroneously exercised jurisdiction in determining that the payments made

by Triad to the State Court Defendants were fraudulent conveyances and piercing the corporate

veil to hold the State Court Defendants liable.  The Missouri Court of Appeals affirmed the State

Court's judgment and the Missouri Supreme Court denied transfer of the matter.

Thereafter, Plaintiff's filed a motion to reopen the Triad bankruptcy case which this Court

granted.  They then filed an adversary proceeding (more than four years after JKV initiated the

State Court Lawsuit) against JKV alleging that (1) JKV violated the automatic stay under

§362(a)(1) by filing the State Court lawsuit concerning fraudulent transfers of property of the

estate and alleging Nadler, Nadler and Rodenberg were the alter egos of Triad and that Triad's

corporate veil should be pierced to make them personally liable, such claims being property of the

Triad bankruptcy estate; (2) JKV violated the automatic stay under §362(a)(3) by including the

allegations and claims in Count III of the State Court lawsuit that Plaintiffs were the alter egos of

Triad because those alter ego claims were property of the Triad bankruptcy estate and that the

funds paid by Triad were fraudulent conveyances was an "act to obtain possession of property of

the estate or of property from the estate or to exercise control over property of the estate; and (3)

JKV violated the automatic stay under §362(a)(6) because those actions described above were and

continue to be an "act to collect, assess, or recover a claim…that arose before the commencement

of the case…."

Defendant JKV filed a Rule 12(b)(6) motion to dismiss arguing (1) Plaintiffs' claims are

barred by the *Rooker-Feldman* doctrine; (2) Plaintiffs' claims are barred by collateral estoppel;

(3) Plaintiffs are non-debtor parties so the automatic stay didn't apply; and (4) Plaintiffs' claims

are barred by laches.  Plaintiffs filed a response to Defendant's motion to dismiss asserting that

the *Rooker-Feldman* doctrine, collateral estoppel and laches are not applicable and that they have

standing to bring this action[1].  The Court took the matter under advisement and will grant

---

[1] Plaintiffs assert that the motion to dismiss should be treated as a motion for summary judgment as it goes outside
the pleadings by attaching the state circuit and appellate court documents.  However, "[i]n reviewing a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is "not precluded in [its] review of the complaint
from taking notice of items in the public record." *Papasan v. Allain,* 478 U.S. 265, 269 n.l, 106 S. Ct. 2932, 92 L. Ed.
2d 209 (1986); *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial
notice of public records and may thus consider them on a motion to dismiss").  "In this circuit, Rule 12(b)(6) motions
are not automatically converted into motions for summary judgment simply because one party submits additional

Defendant's motion to dismiss because Plaintiffs' claims are barred by collateral estoppel and

lack of standing.  The Court need not address the other arguments.

## II.  MOTION TO DISMISS

### A.  Applicable Standard

To withstand a motion under Rule 12(b)(6), a complaint must plead sufficient facts to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577

(2007); *see also, Alexander v. Hedback*, 718 F.3d 762 (8th Cir. 2012); *M.M. Silta, Inc. v.*

*Cleveland Cliffs, Inc.*, 616 F.3d 872 (8th Cir. 2010).  To defeat a motion to dismiss for failure to

state a claim, the plaintiffs need not provide specific facts in support of their allegations, but they

must include sufficient factual information to provide the grounds on which the claim rests, and to

raise a right to relief above a speculative level.  *See Schaaf v. Residential Funding Corp.*, 517

F.3d 544 (8th Cir. 2008).  When considering a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6), the court must view the facts alleged in the complaint in the light most favorable to the

plaintiff.  *In re Glossip*, 331 B.R. 871 (Bankr. W.D. Mo. 2005) (citing *Burkhalter v. Lindquist &*

*Trudeau, Inc.,* 2005 WL 1983809 (E.D. Mo. 2005)).

### B.  Collateral Estoppel- Count II

---

matters in support of or opposition to the motion.... Some materials that are part of the public record or do not
contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion." *Nixon v. Coeur D'Alene
Tribe,* 164 F.3d 1102, 1107 (8th Cir. 1999). In Missouri, as in other states, court records are public records. See *Nixon
v. Warner Communications, Inc.,* 435 U.S. 589, 597-98, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *Pulitzer Publ'g Co.
v. Transit Cas. Co.,* 43 S.W.3d 293, 300-01 (Mo. banc 2001); R.S. Mo. §§ 109.180, 476.010." *Levy v. Ohl,* 477 F.3d
988, 991 (8th Cir. 2007).

As a matter of constitutional and statutory law, *See* U.S. Const. art. IV, § 1 and 28 U.S.C.

§ 1738, federal courts generally "must give to a state-court judgment the same preclusive effect as

would be given that judgment under the law of the State in which the judgment was rendered."

*Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d

56 (1984). Under Missouri law, there are two preclusive doctrines: claim preclusion, or " *res*

*judicata,*" and issue preclusion, which is called "collateral estoppel." *Res judicata* applies when

the claim being pursued is identical to the *claim* previously adjudicated.  *King General*

*Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495,

501 (Mo.1991). Collateral estoppel  is used to preclude the re-litigation of identical *issues.*

In Missouri, collateral estoppel requires four criteria to be met: (1) the issue decided in the

prior adjudication is identical with the issue presented in the present action; (2) the prior

adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is

asserted was a party or was in privity with a party to the prior adjudication; and (4) the party

against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in

the prior suit.  *Shahan v. Shahan*, 988 S.W.2d 529, 531 (Mo. 1999).

Plaintiffs argue that the doctrine of collateral estoppel does not apply to the Judgment as

the issue of violation of the automatic stay was never litigated and is not identical to the issue

presented in the state court case.  The main issue is whether the issue decided in the prior

adjudication is identical with the issue presented in the present action.

### 1.  Judgment on the Merits

There must be a judgment on the merits for collateral estoppel to be applicable.  Here,

JKV filed a petition in the circuit court, Plaintiffs filed a responsive pleading and the state court

held a trial and entered a judgment in favor of JKV.  Thereafter, Plaintiffs filed the motion to

dismiss Count III and vacate the judgment and the circuit court entered an order denying such

relief.  Thus, the Court finds that said judgment is a judgment on the merits for the purpose of

determining whether the doctrine of collateral estoppel applies.

### 2.  Same Parties

There is no dispute that the Plaintiffs that have brought this complaint (Nadler, Nadler and

Rodenberg) are the same parties that were named defendants in the state court litigation.  Also,

the Defendant arguing preclusion in the motion to dismiss was the plaintiff in the state court

litigation.

### 3.  Full and Fair Opportunity to Litigate

Likewise, Plaintiffs availed themselves of all litigation opportunities in the state court

litigation.  There was a circuit court trial with judgment, a motion to vacate with judgment and an

appeal to the Missouri Court of Appeals which resulted in affirmation of the circuit court

judgment.

### 4.  Identical Issues

To satisfy the collateral estoppel requirement that the relevant issues be identical,

defendant JKV must establish the issue decided in the prior adjudication is identical with the issue

presented in the present action.  Plaintiffs argue that collateral estoppel is not appropriate in this

case because the judgment entered by the state court did not find or hold that JKV violated the

6

automatic stay which is what is at issue in their adversary complaint.  JKV asserts that whether

the automatic stay from Triad's bankruptcy was applicable to the state court action was argued by

Plaintiffs in their motion to dismiss Count III filed in the circuit court and in their appeal to the

Missouri Court of Appeals and that both courts considered the argument and entered judgment

against Plaintiffs.

        There are no findings in the Judgment which specifically state that JKV was not in

violation of the automatic stay in bringing the claims for fraudulent conveyance and piercing the

corporate veil.  Because the Court was not provided a transcript, and because the Judgment does

not contain any specific facts upon which it relied in denying the motion to dismiss Count III and

vacate its judgment and the motion to reconsider and/or modify the judgment, the Court is limited

to reviewing and analyzing the pleadings that were provided in deciding if the issue of whether

JKV violated the automatic stay has already been determined.  Plaintiffs argued in the motion to

dismiss Count III and their reply thereto, that all of the fraudulent conveyances at issue were part

of the Triad bankruptcy estate of which the bankruptcy court had exclusive jurisdiction.  They

also asserted that the claim which sought to pierce Triad's corporate veil to reach claims of

fraudulent misrepresentation and fraudulent conveyance against Nadler, Nadler and Rodenberg

was also property of the bankruptcy estate.  Plaintiffs argue in the reply that the filing of the Triad

bankruptcy operated as an automatic stay against JKV of any act to obtain possession of property

of the Triad bankruptcy estate or of property from the Triad bankruptcy estate or to exercise

control over property of the Triad bankruptcy estate under §362(a)(3).  Specifically, Plaintiffs

argued that "any act" included the filing of the circuit court lawsuit because the alleged fraudulent

conveyances are property of the estate and the veil piercing claim is property of the estate.

While it is true that the circuit court did not specifically make findings that JKV did or did

not violate the automatic stay arising from the filing of the Triad bankruptcy by bringing the state

court action, it did opine on the issue Plaintiffs rely on to argue the automatic stay was violated.

Clearly the circuit court rejected Plaintiffs' arguments that the fraudulent conveyances and

piercing of the corporate veil claims were property of the bankruptcy estate since it denied

Plaintiffs' motion to dismiss and vacate judgment that argued the same.  If the circuit court had

agreed with Plaintiffs that the claims were property of the bankruptcy estate it would have granted

their motion.

Further, Plaintiffs then appealed the denial of their motion to dismiss Count III and vacate

judgment to the Missouri Court of Appeals.  In their reply brief to that court, Plaintiffs assert

again that the claims of fraudulent conveyance and piercing the corporate veil were property of

the Triad bankruptcy estate and the circuit court did not have subject matter jurisdiction to decide

the matter.  Thus, practically speaking and as argued in the circuit court pleadings, if the claims

were property of the Triad bankruptcy estate then JKV violated the automatic stay by bringing

such claims in the state court action.  Again, the court of appeals disagreed with Plaintiffs that the

claims were property of the bankruptcy estate and affirmed the circuit court's judgment.

It comes down to the fact that the core of Plaintiffs arguments in the state court litigation

was that the state court had no subject matter jurisdiction of the claims because they were

property of the Triad bankruptcy estate over which the bankruptcy court had exclusive

jurisdiction.  The claim in Count II of the Complaint at issue here is predicated on the same

assertion which the circuit court and state appellate court both rejected.  Accordingly, the Court

finds that the issue of whether the automatic stay under §362 (a)(3) that relates to "property of the

estate" was implicated by the JKV claims was decided in the prior adjudication[2].  Thus, all of the elements for collateral estoppel are met and the Court will grant Defendant's motion to dismiss on Count II[3].

### C.  Count I & III- §362(a)(1) & (a)(6)

Plaintiffs assert in Counts I and III of the adversary complaint that JKV violated § 362(a)(1) & (a)(6) by filing claims against Nadler, Nadler and Rodenberg in state court.  Upon a debtor's filing of a bankruptcy petition, the automatic stay operates to stay, among other things, "the commencement…of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case…."   11 U.S.C. § 362(a)(1).  It also stays all actions "to collect, assess, or recover a claim ***against the debtor*** that arose before the commencement of the case under the title." 11 U.S.C. § 362(a)(6) (emphasis added).  "The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By and Through McMahon v. George Mason Bank,* 94 F.3d 130, 133 (4th Cir. 1996) (citation omitted). Thus, the purpose of the automatic stay is two-fold: to preserve the relative positions and rights of creditors as established by the Bankruptcy Code and to protect the debtor, individually, from collection activities.

The Court agrees that the state court judgment did not address the §362(a)(1) or (a)(6) arguments as they were not raised below and (a)(1) nor (a)(6) are specific to "property of the

---

[2] While Count I alleging violation of §362 (a)(1) could arguably be dismissed under this same analysis taking into account the alter ego determination, it is more clearly and appropriately included in the analysis regarding standing in section C.

[3] A similar analysis applies to the assertion that Plaintiffs' Complaint should be dismissed based on the *Rooker-Feldman* doctrine.

estate" which is what the circuit and appellate courts addressed[4].  Thus, Counts I & III are not

barred by the *Rooker-Feldman* doctrine and/or collateral estoppel as is Count II.  The problem

with Plaintiffs' §362(a)(1) & (a)(6) arguments is that those sections waere intended to protect the

debtor, which in this case is Triad.  Count III of Plaintiffs' adversary complaint conveniently

leaves out the language "against the debtor" contained in §362 (a)(6).

The Court first turns to the question of whether a non–debtor plaintiff has standing to

assert a claim under 11 U.S.C. § 362(a)(1) or (a)(6)[5]. Standing is a prerequisite to the Court's

jurisdiction.  "The issue of standing 'is a threshold question in every federal case, determining the

power of the court to entertain the suit' ". *In re Caldor,* 193 B.R. 182, 185 (Bankr. S.D.N.Y.

1996) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

"[T]he question of standing thwarts the bankruptcy court's jurisdiction and ends the inquiry."

*Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 355 (10th Cir. 1995);

See also *In re Miner,* 229 B.R. 561, 565–66 (2nd Cir. BAP 1999).

Plaintiffs assert that §362(k)(1) provides that "an individual injured by any willful

violation of a stay …shall recover actual damages…."  They ask the Court to adopt the theory that

anyone that has suffered from defendant's actions is in a position to benefit from a remedy.

Plaintiffs are undoubtedly individuals, but the definition of "individual" under 11 U.S.C. §

362(h)[6] does not necessarily include all parties who may have some tangential interest in Debtor's

bankruptcy. *Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer),* 178

---

[4] As noted in footnote 2, §362(a)(1) arguably was also not dealt with by the state court so it is included in this analysis.

[5] The Court notes that Plaintiffs themselves raised the standing issue in their Response to Defendant's Motion to Dismiss.

[6] References to §362(h) refer to what is now §362(k).

B.R. 160, 167 (Bankr. E.D. Tenn. 1995).  In fact, courts have been reluctant to give redress under

§ 362(k) to third parties other than pre-petition creditors. "Nothing in the legislative history

counsels that the automatic stay should be invoked in a manner which would advance the interests

of some third party, such as the debtor's codefendants, rather than the debtor or its creditors." *Id.*

at 167.

Plaintiffs' claims are clearly independent of Debtor's bankruptcy. The claims do not

involve Debtor's property or an interest of the estate.  Its determination does not affect Debtor's

rights or the estate's administration. "The automatic stay of section 362(a) protects only the

debtor, property of the debtor or property of the estate....It does not protect non-debtor parties or

their property." *Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distributing Inc.* (*In re*

*Advanced Ribbons & Office Prods.*), 125 B.R. 259, 263 (9th Cir. BAP 1991). The automatic stay

typically does not apply to a non-debtor (or non-creditor) third party unless special circumstances

exist.  *In re Prairie Trunk Railway,* 112 B.R. 924, 930 (Bankr. N.D. Ill. 1990).  Such

circumstances may exist when there is such identity between a debtor and a third party that

judgment against a non-debtor would be binding upon a debtor. *In re Rubenstein,* 105 B.R. 198,

201–202 (Bankr. D. Conn. 1989); *see also General Dynamics Corp. v. Veliotis (In re Veliotis),* 79

B.R. 846, 848 (Bankr. E.D. Mo.1987). The fact that Plaintiffs are Debtor's owners does not

provide such identity of interest that they falls within the ambit of §362(k) in this instance.

In *In re Prairie Trunk Railway,* the Bankruptcy Court for the Northern District of Illinois

addressed the issue of whether a third-party purchaser of the debtor's assets, as opposed to the

debtor or its creditors, could seek damages under § 362(k) for an automatic stay violation,

11

centering its decision, in part, on the definition of the term "individual" as used in § 362(k). That

court determined that a nondebtor-noncreditor third party was not entitled to recover damages

under § 362. 112 B.R. at 929–31.  Further, the Illinois bankruptcy court considered whether the

term encompasses nondebtor and noncreditor third parties and specifically declined to broaden

the definition to include third parties.  *See Prairie Trunk Railway*. 112 B.R. at 931.

The Sixth Circuit has also declined to extend the protection of the automatic stay to third

parties. In *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196 (6th Cir.1983), the

plaintiffs, who had been named as codefendants in other state and federal court actions along with

two debtors that had commenced bankruptcy cases under Chapter 11, sought protection under the

automatic stay. The *Lynch* plaintiffs theorized that because the state and federal court actions

against their codefendant debtors had been stayed pursuant to § 362, the actions against them

should also be stayed. The court rejected this theory, stating, "[i]t is universally acknowledged

that an automatic stay of proceeding accorded by § 362[ (a)(1)] may not be invoked by entities

such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ...

debtor.... Nothing in the legislative history counsels that the automatic stay should be invoked in a

manner which would advance the interests of some third party, such as the debtor's co-defendants,

rather than the debtor or its creditors." That court went on to conclude that "it would distort

congressional purpose to hold that a third party solvent co-defendant should be shielded against

his creditors by a device intended for the protection of the insolvent debtor" and creditors thereof.

*Id.* at 1196–97 (citations omitted).

This Court agrees that the purpose of § 362 is to protect debtors and creditors and agrees

with the reasoning that the non-debtor, non-creditor third party Plaintiffs in this case do not have

standing under § 362 to challenge violations of the automatic stay and recover damages. *See, e.g.,*

*In re Clemmer*, 178 B.R. 160, 165-67 (Bankr. E.D. Tenn. 1995)

### III.  CONCLUSION

For the foregoing reasons, the Court grants the Motion to Dismiss of Defendant John

Knox Village.

DATED:        January 26, 2016             /s/ Dennis R. Dow      

                             HONORABLE DENNIS R. DOW
                             UNITED STATES BANKRUPTCY JUDGE

Copies to:
Stanley B. Bachman

Jerry D. Rank